# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| v. | ) Docket no. 2:18-cr-00036-GZS |
| JOSHUA KAUFMAN, | ) |
| Defendant. | ) |

## ORDER REGARDING DEFENDANT'S OBJECTION

Defendant Joshua Kaufman has entered a conditional guilty plea to one count of possession with intent to distribute five or more grams of methamphetamine in violation of 21 U.S.C. § 841(b)(1)(B). He is presently awaiting sentencing, which is scheduled for July 23, 2019. In advance of that hearing, Defendant objected to the Guidelines calculation contained in the Presentence Investigation Report ("PSR"). At the May 14, 2019 presentence conference, the Court set a briefing schedule focused on the legal issue raised in Defendant's First Objection to the PSR. The Court subsequently received a memorandum from Defendant (ECF No. 129), a response from the Government (ECF No. 130), and a reply memorandum from Defendant (ECF No. 131). Having fully considered the arguments laid out in these filings and the cases cited therein, the Court now OVERRULES Defendant's First Objection and announces its intention to follow the Guidelines, specifically U.S.S.G. § 2D1.1(c)(4) & note (B), in calculating the converted drug weight of the methamphetamine for which Kaufman is being held accountable.

The PSR holds Kaufman accountable for three separate packages of methamphetamine: (1) 166 grams of 94 percent pure methamphetamine seized from a priority mail package; (2) 47.6

grams of 77 percent pure methamphetamine seized from Kaufmann's vehicle; and (3) 1.258 grams of 96 percent pure methamphetamine seized from Kaufman's vehicle in a separately packaged glassine bag. The driver of Kaufman's converted drug weight is whether his methamphetamine is classified as actual methamphetamine or a methamphetamine mixture. Under the Guidelines, these seized amounts equal 193.807 net grams of actual methamphetamine, which translates to a converted drug weight of 3876.14 kilograms. By comparison, if the same seized amounts are treated as methamphetamine mixture, the seized amounts equal 214.858 grams of methamphetamine mixture, which translates to a converted drug weight of 429.761 kilograms.[1] The difference in these calculations is 3446.379 kilograms of converted drug weight, which in this case is the difference between a base offense level of 26 and a base offense level of 32. See U.S.S.G. § 2D1.1(c)(4) & (7).

Multiple district courts have recently declared categorical policy disagreement with the methamphetamine provisions of U.S.S.G § 2D1.1. See, e.g., United States v. Johnson, 379 F. Supp. 3d 1213, 1227 (N.D. Ala. 2019) (finding a "tight fit between the policy criticisms of the methamphetamine Guidelines, and [the defendant's] individual circumstances"); United States v. Bean, 371 F. Supp. 3d 46, 50-51 & n. 3 (D.N.H. 2019) (collecting cases); United States v. Saldana, No. 1:17-cr-271-1, 2018 U.S. Dist. LEXIS 110790, at *7-*11 (W.D. Mich. July 3, 2018) (adopting a Guidelines "methodology" under which all methamphetamine would be counted as methamphetamine mixtures). However, the criticism of the methamphetamine Guidelines actually stretches back more than ten years. See, e.g., United States v. Hayes, 948 F. Supp. 2d 1009, 1015-17 (N.D. Iowa 2013) (discussing "Judge Bataillon's long-standing disagreement with the methamphetamine Guidelines on policy grounds" and collecting cases dated back to 2008).

---

[1] The Court notes that Kaufman is also being held accountable for 56 grams of cocaine, which has a converted drug weight of 11.2 kilograms.

2

Defendant invokes three arguments that have been developed in this line of cases to support his argument for a categorical variance from the actual methamphetamine Guideline calculation: (1) a lack of reliance on empirical data to create the methamphetamine Guidelines, (2) methamphetamine purity is a poor proxy for culpability, and (3) purity-based methamphetamine Guidelines create unwarranted sentencing disparities. Before considering each of these arguments, the Court recognizes its discretion to vary based on any categorical policy disagreement with a Guideline. See United States v. Hassan-Saleh-Mohamad, No. 18-1883, 2019 WL 2949294, at *4 (1st Cir. July 9, 2019) ("[I]t is true that 'after Kimbrough, a district court makes a procedural error when it fails to recognize its discretion to vary from the guideline range based on a categorical policy disagreement with a guideline.'") (quoting United States v. Stone, 575 F.3d 83, 89 (1st Cir. 2009)). However, the Court likewise recognizes that it may exercise its discretion to follow the Guidelines. See United States v. Bostock, 910 F.3d 348, 350 (7th Cir. 2018) ("A court may deviate from a Guideline if persuaded that the Commission is mistaken, . . . but is never required to do so.")

As to the lack of empirical data, as the Supreme Court has explained, "[t]he Commission did not use th[e] empirical approach in developing the Guidelines sentences for drug-trafficking offenses." Kimbrough v. United States, 552 U.S. 85, 96 (2007). Instead, it was guided by the statutory "weight-driven scheme." Id.; see also United States v. Reyes, 9 F. Supp. 3d 1196, 1217-18, 1231-34 (D. N.M. 2014); United States v. Diaz, No. 11-CR-00821-2(JG), 2013 WL 322243, *3-*7 (E.D.N.Y. 2013) (both explaining the applicable legislative history). In doing so, the Sentencing Commission ensured proportional drug sentences in cases involving similar drug quantities regardless of whether a mandatory minimum is charged in a particular case and thereby aligned the Guidelines with the expressed will of Congress. See, e.g., United States v. Rodriguez-

Chavarria, D. Kan. No. 17-40121, 12/17/18 Transcript (ECF No. 130-1), PageID # 332 ("[T]he Sentencing Commission strove to implement the sentiments that are embraced by Congress and spread proportionally around the five-year and ten-year mandatory minimum quantities."). In short, the drug quantity Guidelines rest on a foundation of legislative support rather than empirical support. As it relates to methamphetamine, the Court declines Defendant's invitation to find this legislative foundation categorically inadequate based on the current record. Stone, 575 F.3d 83, 89 ("Even though a guideline is affected by congressional adjustment, a sentencing court may rely on it."); but cf. Kimbrough, 552 U.S. 96-99 (explaining the "three problems with the crack/powder disparity" identified by Sentencing Commission and the Commission's proposed amendments to fix the disparity).

Turning to Defendant's two purity-based arguments, the Court is similarly unpersuaded that these arguments support a categorical variance for all methamphetamine cases. As the calculations in this case display, the 10:1 ratio used to distinguish actual methamphetamine from methamphetamine mixture can have a significant impact a defendant's Guideline calculation. See Bean, 371 F. Supp. 3d at 49-50 (explaining how the Guidelines categorize methamphetamine based on purity). However, as Defendant and other courts have acknowledged, in recent years, methamphetamine distributed in the United States is generally pure. See id. at 52 (noting an average purity of 90 percent or higher); see also 2018 National Drug Threat Assessment at 60 (charting methamphetamine purity ranging from 94.8% to 96.9% between 2012 and 2017). Similarly, in this case, most of the methamphetamine seized reflects purity levels in excess of 90 percent. Thus, in the existing methamphetamine marketplace, it would appear there is relative uniformity in the product purity. Moreover, application of the actual methamphetamine

Guidelines, as compared to the mixture Guidelines, allows for proportional penalties.[2] While Defendant maintains purity is a poor proxy for his culpability, the Court views purity as a reasonable proxy for the danger of the methamphetamine he possessed and attempted to possess, as well as for the relative amount of methamphetamine he would have been able to distribute into the community. In the Court's view, if there is a proxy problem with the methamphetamine Guidelines, it is the methamphetamine mixture Guideline, which contains an implicit assumption that methamphetamine mixtures are approximately 10 percent pure. By all accounts, none of the methamphetamine in circulation should be assumed to contain such a low purity level. See, e.g., United States v. Hoover, No. 4:17-CR-327-BLW, 2018 WL 5924500, *2 (D. Idaho Nov. 13, 2018) ("[P]urity levels of seized drugs in the 10% range were common until approximately 20 years ago. Realities on the ground have since changed.")

Defendant also argues that the Guidelines for actual methamphetamine create unwarranted sentencing disparities compared to other types of drug offenses. The Court acknowledges that the actual methamphetamine Guidelines are undeniably harsh when compared to other drugs, such as cocaine or heroin. However, in the Court's view, the Guidelines reflect the harsh societal harms caused by the production, distribution, and use of pure methamphetamine as well as a legislative desire to address these harms with significant penalties.

While the Court has reviewed and considered all of the decisions Defendant has cited in support of his argument for a categorical variance, the Court considers each distinguishable from the facts presented here and respectfully disagrees with those rulings. Rather, the Court finds the

---

[2] The Court acknowledges that some courts have recently considered a categorical variance out of concern that the decision to test seized methamphetamine is "arbitrary" and "in practice" means defendants who are sentenced after testing "will nearly always be subject to a substantially higher Guidelines penalty range." United States v. Rodriquez, No. 3:17-cr-00031-TMB, 2019 WL 1508036, *4 (D. Alaska April 5, 2019); see also United States v. Pereda, No. 18-cr-00228-CMA, 2019 WL 463027, *5 (D. Colo. 2019); United States v. Hoover, No. 4:17-cr-327-BLW, 2018 WL 5924500, *2-*3 (D. Idaho Nov. 13, 2018). Nothing in the record or in this Court's experience leads it to believe that there is an arbitrary process for testing seized methamphetamine within the District of Maine.

alternative arguments presented by the Government persuasive.  (See Gov't Mem. (ECF No. 130) PageID #s 303-310.)  Therefore, in an exercise of its "Kimbrough discretion," the Court will apply the actual methamphetamine Guidelines to calculate the base offense level in this case.  Stone, 575 F.3d at 90.  The Court is issuing this order in advance of the sentencing hearing to aid counsel in their preparations for sentencing.  While the Court is announcing that it does not intend to vary based on a categorical disagreement, nothing in this Order is meant to suggest that the Court may not consider a variant sentence based upon its full consideration of all of the 3553(a) factors at sentencing.

      SO ORDERED.

                                       /s/ George Z. Singal
                                       United States District Judge

Dated this 17th day of July, 2019.